Diana CLINE, as Personal Representative of the Estate of Zachary Noecker; and James Mullins and Carrie Mullins as Personal Representatives of the Estate of Kary Mac Mullins, Appellants (Plaintiffs),

v.

STATE of Wyoming, DEPARTMENT OF FAMILY SERVICES, and Department of Education, Appellees (Defendants).

No. 96–6.

Supreme Court of Wyoming.

Nov. 22, 1996.

H.W. Rasmussen of Badley & Rasmussen, Sheridan, for Appellants.

William U. Hill, Attorney General, and Michael K. Davis (argued), of Yonkee & Toner, Sheridan, for Appellees.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN* and LEHMAN, JJ.

LEHMAN, Justice.

Suit, alleging wrongful death claims, was brought against the State of Wyoming, Department of Family Services (DFS) and Department of Education (DOE), by the survivors of two teenagers killed in an automobile accident on April 19, 1993. At the time of their death, Kary Mullins and Zachary Noecker were in the care of Normative Services, Inc. (NSI), a twenty-four hour care facility in Sheridan, Wyoming. The two

* Chief Justice at time of oral argument.

were passengers in a vehicle owned and operated by Edward A. Gillison, an employee of NSI, when they were involved in the fatal collision. The district court granted summary judgment in favor of the State, finding as a matter of law that Gillison was not a "public employee" pursuant to the Wyoming Governmental Claims Act and that NSI was an independent contractor for the State of Wyoming.

We affirm.

Appellants state two issues:

1. The District Court erred in finding that Edward A. Gillison was not a "public employee" pursuant to the immunity statutes.

2. The District Court erred when it found that NSI was an independent contractor for the State of Wyoming.

Appellees present the issues in this way:

1. Is the State of Wyoming liable under the Wyoming Governmental Claims Act for damages resulting from the negligence of the employee of an independent contractor?

2. Is the Department of Family Services entitled to judicial immunity in its role of monitoring children placed in a twenty-four hour care facility pursuant to a court order?

3. Did Appellants release any claims they may have had against the State of Wyoming by releasing the persons they claim to be agents of the State?

## FACTS

Normative Services, Inc. is a private, non-profit corporation certified by the State as a residential treatment facility and to provide educational services. Zachary Noecker was voluntarily placed in NSI's day treatment program pursuant to a consent decree entered by the Sheridan County District Court. Kary Mullins was admitted to NSI's residential program on the order of the Washakie County District Court on a CHINS (Child in Need of Supervision) petition. The care of both children was paid for by the Department of Family Services and the Department of Education; DOE paid for the cost of educating the youths, and DFS paid the residential component as well as the cost of counseling.

On April 19, 1993, Edward Gillison, a counselor/educator employed by NSI, was driving Mullins, Noecker and other NSI students to the Sheridan County YMCA for recreation when his car crossed the center line and collided with an oncoming vehicle. Gillison, Mullins and Noecker lost their lives in the accident.

Gillison's insurance company, State Farm Mutual Automobile Insurance Company, reached a settlement with Diana Cline, personal representative of Zachary Noecker, and James and Carrie Mullins, personal representatives of Kary Mullins (collectively, appellants). In return, appellants released all claims against Gillison and NSI. Appellants subsequently filed suit against the State of Wyoming, DFS and DOE (appellees), alleging that Gillison and NSI fell within the statutory definition of "public employee" contained in the Governmental Claims Act. W.S. 1–39–103(a)(iv) (Supp.1996). Appellants claim that Gillison, as a public employee, was negligent in the operation of a motor vehicle while acting within the scope of his duties, thereby rendering the State of Wyoming liable through the Department of Family Services and the Department of Education under W.S. 1–39–105 (1988).

Both parties filed motions for summary judgment. After a hearing on the motions, on December 14, 1995, the district court granted summary judgment in favor of appellees. Appellants timely filed this appeal.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56; *Rue v. Carter,* 919 P.2d 633, 634 (Wyo. 1996). This court evaluates the propriety of summary judgment using the same standards and materials used by the district court, affording no deference to the district court's decision on issues of law. *Scott v. Scott,* 918 P.2d 198, 199 (Wyo.1996). We look at the record from a viewpoint most favorable to the party opposing the motion, allow-

ing that party all reasonable inferences which may be fairly drawn from the record. *Jack v. Enterprise Rent–A–Car Co. of Los Angeles,* 899 P.2d 891, 893 (Wyo.1995).

## DISCUSSION

Claims against the State must be brought pursuant to the Wyoming Governmental Claims Act (Claims Act). Under the Claims Act, sovereign immunity is the rule, and governmental liability is the exception. W.S. 1–39–104(a) (1988). Unless a statutory exception is applicable, no liability will attach. *Id.*

Appellants claim appellees are liable under § 1–39–105 of the Claims Act, which provides: "A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of any motor vehicle, aircraft or watercraft." The act defines "public employee" as "any officer, employee or servant of a governmental entity, including elected or appointed officials, peace officers and persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation." W.S. 1–39–103(a)(iv)(A) (Supp.1996). The term does not include an independent contractor except contract physicians in specified circumstances. W.S. 1–39–103(a)(iv)(B) (Supp. 1996). A "governmental entity" means "the state, University of Wyoming or any local government." W.S. 1–39–103(a)(i) (Supp. 1996). "Local government" is defined as "cities and towns, counties, school districts, joint powers boards, airport boards, public corporations, community college districts, special districts and their governing bodies, all political subdivisions of the state, and their agencies, instrumentalities and institutions." W.S. 1–39–103(ii) (Supp.1996).

■ The dispositive issue is whether NSI or Gillison are "public employees" under the Claims Act. Appellants must establish that either NSI or Gillison was a public employee—an officer, employee or servant of the State, DFS or DOE, and not an independent contractor—or their claims will be barred by the Claims Act. In Wyoming, the overriding element in determining whether one is an employee or independent contractor is whether the employer has a right to control the details of the work whereby liability is sought to be established. *Stephenson v. Pacific Power & Light Co.,* 779 P.2d 1169, 1176 (Wyo.1989); *Holliday v. Bannister,* 741 P.2d 89, 95 (Wyo.1987). "The control of the work reserved in the employer which effects a master-servant relationship is control of the means and manner of performance of the work, as well as of the result[.]" 41 AM. JUR.2D *Independent Contractors* § 12 (1995); *see also, Natural Gas Processing Co. v. Hull,* 886 P.2d 1181, 1185 (Wyo.1994).

■ Ordinarily the determination of whether a master-servant relationship exists is a question of fact for the jury, but it becomes a matter of law when the pertinent facts are not in dispute and but one reasonable inference can be drawn. *Barnes v. Fernandez,* 526 P.2d 983, 985 (Wyo.1974). Stated differently, absent evidence of control by appellees of the means and manner in which NSI (and Gillison) performed its work, appellants' case must fail as a matter of law.

In making their argument, appellants rely on Wyoming statutes and rules which govern licensing and certification of shelter care facilities and which mandate minimum standards for educational providers. Specifically, appellants argue that the DFS and DOE control the daily operation of NSI through DFS-promulgated Standards for Certification, DFS' authority to approve individual service plans for children-in-placement, DFS' and DOE's authority to approve individual education plans, monitoring of NSI's operation and methodology by local DFS caseworkers, and the ability to terminate the contract with NSI for noncompliance with statutory and regulatory mandates. Further, appellants argue that DFS and DOE must retain this level of control because they have a non-delegable statutory duty to protect the safety and welfare of children who are placed in alternative care facilities.

Our examination of the record leads us to conclude that there are no genuine issues of material fact with respect to the retention of control by appellees over the details of the work performed by NSI. "As a practical

proposition, every contract for work to be done reserves to the employer a certain degree of control, at least to enable the employer to see that the contract is performed according to specifications." 41 AM.JUR.2D *Independent Contractors* § 12 (1995). The fact that child care facilities must be certified by the State and meet minimum statutory and regulatory standards in order to retain that certification does not equate to control over the means and manner in which NSI operates its business on a daily basis. Nor is a requirement that work be performed according to standards and specifications imposed by appellees sufficient to establish the degree of control necessary to transform the relationship into one of master-servant. *See id.; Natural Gas Processing,* 886 P.2d at 1185.

The DFS official primarily responsible for certification of children's care facilities testified that no one from DFS attended NSI board meetings, DFS had no power to hire or fire NSI employees and was not involved in hiring or firing decisions. DFS caseworkers, along with representatives from the school district and NSI, collaborated in developing individual written plans for children-in-placement. Caseworkers also reviewed monthly reports and conducted six-month reviews of a child's placement, but beyond that DFS did not involve itself in the details of treatment. DFS could voice concerns about the manner in which NSI provided its services; but if the disagreement was not settled, the court which ordered placement of the child resolved the issue.

DOE required that physical education be included in the curriculum for students but did not specify how often or where such activity was to take place. Neither DFS nor DOE mandated that the children be transported to the YMCA for recreation. No one at DFS was consulted about the decision to transport the youths on April 19, 1993, nor was there any requirement that DFS be consulted about such a decision. Trips off site for recreation using personal vehicles were subject to approval by an NSI program director or manager. DFS standards contained no provision regarding transportation of students.

In sum, the undisputed facts illustrate that NSI was fully in control of deciding how to conduct its day-to-day operations in order to successfully perform its obligations under the contracts with DFS and DOE. Thus, as a matter of law, NSI was an independent contractor, and neither NSI nor its employee Edward Gillison was a "public employee" under the Claims Act. Having so determined, we need not decide the additional issues raised by appellees.

### CONCLUSION

We find that no genuine issue of material fact existed in this case and that appellees were entitled to judgment as a matter of law.

Affirmed.