Janet WHITE and Stuart White, individually and as the executors and administrators of the estate of Chauncey White, Appellants (Plaintiffs),

v.

The UNIVERSITY OF WYOMING; Sherene McHenry, individually and as employee and/or agent of the University of Wyoming; and Bobbi Johnstone, individually and as employee and/or agent of the University of Wyoming, Appellees (Defendants).

No. 97–51.

Supreme Court of Wyoming.

April 1, 1998.

---

Timothy C. Kingston of Graves, Miller & Kingston, P.C., Cheyenne, for Appellants.

J. Kent Rutledge, Corinne E. Rutledge and Stephen A. Fermelia of Lathrop & Rutledge, Cheyenne, for Appellees.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

LEHMAN, Justice.

Appellants, Janet and Stuart White (Whites), seek review of the district court's summary judgment disposing of their wrongful death claims against appellees, the University of Wyoming (UW) and UW employees Sherene McHenry and Bobbi Johnstone. The Whites' claims arose out of the suicide death of their son, Chauncey White, while he was a student at UW. We affirm.

The Whites pose these issues:

A. Did the University of Wyoming and the Appellee employees act as "health care providers" within the meaning of Wyo.Rev.Stat. § 1–39–110(a)?

B. Did the Trial Court err in holding that the Appellees were immune from liability under the Wyoming Governmental Immunity Act?

The appellees summarize the issue in this way:

Was the trial court correct as a matter of law that the Appellees were not "health care providers" pursuant to Wyoming Statute § 1–39–110(a) and under the undisputed material facts of this case, and were therefore immune from liability under Section 1–39–104(a) of the Wyoming Governmental Claims Act?

## FACTS

Chauncey White enrolled as a freshman at UW in the fall of 1990 when he was eighteen years old. He lived in Downey Hall, a dormitory on the UW campus. On December 14, 1990, White was found intoxicated in Downey Hall. His speech was slurred, and he had vomited. Because White was an underage drinker, and because McHenry, the Hall Director, was concerned that White might asphyxiate in his sleep, she called the University Police. The campus police arrived at Downey Hall at about 10:45 p.m., arrested White, and then took him to Ivinson Memorial Hospital. White was discharged from the hospital at 1:45 a.m., on December 15, 1990. Sometime between 4:00 and 6:00 that morning White inflicted superficial wounds on his wrists with a dull pocket knife or razor blade. McHenry talked with White and assessed his risk of committing suicide. Although she determined he was not suicidal, McHenry again contacted the University Police and requested they contact the University Counseling Center's Crisis Intervention Team (CIT) [1].

The University Police called CIT; and Johnstone, the CIT volunteer on duty, responded to the call. She went to Downey Hall and talked with White for an hour or more on December 15, 1990, in an effort to assess White's risk of committing suicide. White denied that he had attempted to commit suicide and assured Johnstone that he was not suicidal. Johnstone determined that White did not have a plan, or access to a means, to commit suicide and that he had a good support system of friends. Johnstone talked to White about counseling and the UW Counseling Center, and White told Johnstone he was willing to seek counseling. Johnstone concluded that White was at low risk at that time to do further harm to himself, which ended the crisis intervention. White's parents were not informed of the incident.

Two years later, on March 22, 1993, Chauncey White committed suicide. The Whites filed a wrongful death action against

appellees, alleging that McHenry, Johnstone and the University were negligent and breached a fiduciary duty to the Whites by failing to adequately monitor, treat, counsel, or give notice to the Whites in response to their son's December 1990 suicide attempt. In response, appellees filed a motion for summary judgment. On January 6, 1997, the district court granted the motion, finding appellees immune under the Wyoming Governmental Claims Act. The Whites timely filed this appeal.

## STANDARD OF REVIEW

■ Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56; *Cline v. State, Dep't of Family Servs.*, 927 P.2d 261, 262 (Wyo.1996). This court evaluates the propriety of summary judgment using the same standards and materials used by the district court, affording no deference to the district court's decision on issues of law. *Id.* We look at the record from the viewpoint most favorable to the party opposing the motion, allowing that party all reasonable inferences which may be fairly drawn from the record. *Id.* at 262–63.

## DISCUSSION

■ Under the Wyoming Governmental Claims Act, governmental entities and their employees are immune from tort liability except as specifically provided in the Act. W.S. 1–39–104 (1997). The University of Wyoming is a governmental entity as that phrase is defined in W.S. 1–39–103(a)(i) (1997). Section 1–39–110(a) provides:

> (a) A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of health care providers who are employees of the governmental entity, * * * while acting within the scope of their duties.

The Whites contend that McHenry and Johnstone were "health care providers" within the

---

1. The Crisis Intervention Team is also referred to in the summary judgment materials as Crisis Intervention Services and the Emergency Inter-

vention Team. We refer to the team throughout this opinion as the Crisis Intervention Team or CIT.

meaning of W.S. 1–39–110(a) and, therefore, appellees are not immune from liability.

■ The Claims Act does not define the term "health care provider." In *Troyer v. State, Dep't of Health and Social Servs.*, 722 P.2d 158, 161 (Wyo.1986), we combined the ordinary dictionary definitions of the words health, care, and provider, and concluded that a "health care provider" is "one who cures or prevents impairments of the normal state of the body." In *May v. Southeast Wyoming Mental Health Center*, 866 P.2d 732, 737 (Wyo.1993), we applied the *Troyer* definition to determine whether the defendants were health care providers. The legislature amended the Claims Act[2] after our decisions in *Troyer* and *May* and had the opportunity to correct our decisions interpreting the Act, if we were in error. Because it did not, we can assume that those decisions correctly reflected the legislative intent when they interpreted "health care provider" to mean "one who cures or prevents impairments of the normal state of the body." *See Darrar v. Bourke*, 910 P.2d 572, 577 (Wyo.1996).

■ The Whites claim there are genuine issues of material fact with respect to the duties of McHenry and Johnstone. In reviewing the record from the vantage most favorable to the Whites and giving them the benefit of all favorable inferences that can be drawn from the record, we do not find that to be the case. Once McHenry and Johnstone established their duties as a matter of fact, the issue of whether they were health care providers is a question of law which is an appropriate matter for summary judgment. *Matthews v. Wyoming Dep't of Agriculture*, 719 P.2d 216, 219 (Wyo.1986).

McHenry was the Hall Director of Downey Hall. In her deposition testimony, McHenry testified that assessing suicide risk was part of her job. She was trained to look at whether the individual had a plan to commit suicide, whether the individual had access to a means of committing suicide, and how lethal those means were. Hall directors were also trained to call campus police if necessary when dealing with alcohol problems, and instructed to call campus police and involve the Crisis Intervention Team when dealing with individuals who may pose a threat to themselves or others.

Johnstone was the Assistant Director for Fraternity/Sorority Life in the Office of Student Life. Her educational background included a Bachelor of Science degree in psychology and a Master's degree in counseling. Johnstone's job responsibilities included supervising fraternities and sororities on the UW campus as well as dealing with students who walked into her office with a variety of student life concerns. As a part of her work, Johnstone would talk with students about situational problems that could be resolved by referring them to a service, providing information, or giving support. She stated that the "counseling" she did in the Student Life Office was oriented toward developmental issues that arise when students are in the college environment, away from home and still in the maturing process. Johnstone distinguished the counseling she provided from that provided by the counseling center, which was often of longer duration and had different purposes. According to Johnstone, the counseling center was staffed by counseling psychologists.

Johnstone was a volunteer member of the campus Crisis Intervention Team, and she was acting in that capacity when she interacted with White. She qualified for the CIT because she was a University employee with a Master's degree in counseling. The stated purpose of the CIT is "to provide emergency assistance to full-time students of the University and clients of the Counseling Center in such a way as to provide for both the welfare of the individual student and the University Community." The CIT objectives are to "function as situational assessors/managers, crisis counseling intervenors, and referral resources to support services." In both her positions, Johnstone was trained to assess suicide risk; and, as a CIT volunteer, she received additional training in how to deal with crisis and emergency situations.

2. Wyoming Statute 1–39–110, the section stating the specific exception for health care providers, was amended in 1988, 1989, and 1990. Section 1–39–103, the definition section of the Claims Act, was amended in 1989, 1993, and 1997.

Both McHenry and Johnstone were responsible for assessing suicide risk and making referrals to appropriate support services. Neither position involved curing and preventing impairments of the normal state of the body. Neither position involved treating or diagnosing physical or mental illness. Neither position required medical training or medical licensure, and neither McHenry nor Johnstone had such training or were licensed or otherwise authorized to provide health care. We conclude, based on the undisputed facts presented in the summary judgment materials, that McHenry and Johnstone were not health care providers as contemplated by § 1–39–110.

Because McHenry and Johnstone were not health care providers, the Whites' claims are barred by the Claims Act. The order granting summary judgment is affirmed.