**EXXON CORPORATION,**
Appellant (Plaintiff),

v.

**BOARD OF COUNTY COMMISSION-
ERS, SUBLETTE COUNTY, Ap-
pellee (Defendant).**

State of Wyoming Department
of Revenue, Appellant
(Plaintiff),

v.

Board of County Commissioners, Sublette
County, Appellee (Defendant).

Nos. 98–45, 98–46.

Supreme Court of Wyoming.

Aug. 27, 1999.

Representing Appellant Exxon Corp.: Lawrence J. Wolfe and Patrick R. Day of Holland & Hart, Cheyenne, WY; and Brent R. Kunz and Dominique D.Y. Cone of Hathaway, Speight & Kunz, Cheyenne, WY. Argument by Mr. Day. Morris R. Massey of Brown, Drew, Massey & Sullivan, Casper, WY for Amici Curiae Rocky Mountain Mineral Association, acting through its Wyoming division, the Petroleum Association of Wyoming, the Wyoming Taxpayers Association, the Wyoming Mining Association, and the Wyoming Heritage Society.

Representing Appellant Dep't of Rev.: William U. Hill, Attorney General, and Vicci M. Colgan, Senior Assistant Attorney General. Argument by Ms. Colgan.

Representing Appellee: John C. McKinley and Nancy D. Freudenthal of Davis & Cannon, Cheyenne, WY. Argument by Ms. Freudenthal. Wade E. Waldrip of Williams, Kelly, Waldrip & Thompson, Buffalo, WY for Amicus Curiae Wyoming County Commissioners Association.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

LEHMAN, Chief Justice.

This appeal involves a dispute over the valuation of Exxon's production from the La-Barge wellfield in Sublette County. We agree with the district court that the Sublette County Board of County Commissioners may present allegations to the Board of Equalization that Exxon's production has been improperly or unequally assessed, thus triggering the Board's authority to carefully examine the case pursuant to Wyo. Stat. Ann. § 39-1-304(a)(xiv) (Michie 1997). We do not agree, however, that Sublette County may void a judicially approved settlement agreement which established the method to be used in computing Exxon's production valuation. We affirm in part and reverse in part.

## ISSUES

In Case No. 98-45, appellant Exxon Corporation (Exxon) presents the following issues:

1. Whether Wyo. Stat. § 39-1-304(a)(xiv) should be construed as an open-ended appeals statute which the County can invoke to avoid its failure to file a timely appeal.

2. Whether Sublette County may retroactively void its obligations under a 1989 Settlement Agreement even though it has repeatedly ratified that Agreement by accepting its benefits.

* Retired November 2, 1998.

In Case No. 98–46, appellant State Department of Revenue presents essentially the same issues:

1. Whether Wyo. Stat. § 39–1–304(a)(xiv) may be used by Sublette County to circumvent its failure to file timely appeals under Wyo. Stat. § 39–1–304(a).

2. Whether Sublette County may retroactively reject a 1989 settlement agreement concerning mineral valuation for production occurring through 1996.

The Board of County Commissioners of Sublette County, the appellee in these consolidated cases, states the issues in this manner:

1. Is the Board of Equalization barred from exercising its statutory duty to review and remedy improper or negligent administration of the tax laws by any action or inaction of Sublette County?

2. Does the 1989 Settlement Agreement bar the Board of Equalization from exercising its statutory duty to review and remedy improper or negligent administration of the tax laws?

### FACTS

In 1986, Exxon began extracting natural gas from the LaBarge wellfield in Sublette County. Pursuant to Wyoming statutes, Exxon's production is subject to severance and ad valorem taxes. For the 1986 and 1987 tax years, Exxon used the "netback" method of valuation. After deductions, Exxon reported a taxable value of zero for its LaBarge production. The Department of Revenue disputed this valuation and did not certify taxable value for those years.

Litigation regarding valuation of the LaBarge production began in 1988. That year, the Wyoming legislature enacted Wyo. Stat. Ann. §§ 39–1–401 and –402 (Michie Cum. Supp.1988). These statutes, which have since been repealed, provided that total deductions allowed by the Department of Revenue from the sale of taxable natural gas and associated natural resources could not exceed 40% of the annual gross receipts from the sale of these products. Wyo. Stat. Ann. § 39–1–402(a) (Michie Cum.Supp.1988) (Repealed by 1989 Wyo. Sess. Laws ch. 57, § 1). Shortly after these statutes were enacted, Exxon filed a declaratory judgment action in district court for the First Judicial District seeking a declaration that the 40% "cap" legislation was an unconstitutional delegation of legislative authority. Among the defendants named in the suit were the Department of Revenue, the Board of Equalization, and Sublette County.

In January 1989, a settlement was reached in the cap litigation, and a "Stipulation for Entry of Declaratory Judgment" was filed in district court. Signed by Exxon, the Wyoming Attorney General, and the Sublette County Attorney, the stipulation provided: "The parties have engaged in settlement negotiations which have resulted in an agreement which is embodied in a Settlement Agreement, an executed copy of which is attached." Sublette County was listed among the parties to the settlement agreement. Pursuant to the stipulation, the district court entered a declaratory judgment pronouncing the 40% cap legislation unconstitutional, thus ending the cap litigation.

Under the terms of the settlement agreement, Exxon paid the State and Sublette County $12 million in full satisfaction of Exxon's severance and ad valorem tax liability for the 1986, 1987, and 1988 LaBarge production. The settlement agreement also established the method to be used to value post–1988 LaBarge production. For January 1, 1989, through August 31, 1991, the State [1] and County agreed to apply the comparison value method of valuation; and two of Exxon's processing agreements, the Howell and Yates agreements, were to be used as comparable value in computing valuation. In exchange, Exxon agreed that, during this period, it would not contest the applicability of ad valorem and severance taxes to federal helium. [2] As to the valuation method to be used

---

1. Under the terms of the settlement agreement, the term "State" refers to both the Board of Equalization and the Department of Revenue.

2. According to the settlement agreement, Exxon was producing helium from federal lands pursuant to an agreement with the federal government, which owns that helium. It was Exxon's contention that Wyoming could not tax helium owned by the federal government.

after August 31, 1991, the agreement provided:

> After August 31, 1991, the State agrees that it will recognize the Howell and Yates agreements as a comparison value and that the comparison value method may be used in conjunction with other recognized appraisal techniques to determine value. If the State uses any method other than the comparison value method based on the Howell and Yates agreements, the Parties agree that the question of future taxability, for severance and ad valorem purposes, and value of future helium production remain open and are not resolved by this Agreement.

In 1997, Sublette County filed a "Petition for Board Examination" with the Board of Equalization (Board).[3] Initiated pursuant to Wyo. Stat. Ann. § 39–1–304(a)(xiv) (Michie 1997), Sublette County's petition requested the Board investigate allegations that the 1989 settlement agreement, as it was administered, resulted in illegal, improper, and unequal assessment of the LaBarge production. At the heart of Sublette County's petition were allegations that use of the Howell and Yates agreements as comparable value permitted Exxon to make numerous improper deductions. The petition questioned Exxon's valuations for the 1992–1996 tax years (1991–1995 production years). Upon Sublette County's motion, the Board joined Exxon as a party.

Exxon and the Department of Revenue responded to Sublette County's petition before the Board by filing the present declaratory judgment action in the district court for the First Judicial District. These unconventional allies sought, *inter alia*, a declaration that Sublette County had waived any right it may have had to challenge Exxon's valuation. Exxon and the Department also sought a declaration that Sublette County was bound to the 1989 settlement agreement. With the battle shifted to district court, the Board of Equalization stayed action on Sublette County's petition before the Board, believing that "[g]iven the unique circumstances of these matters, it is in the best interest of all parties to seek judicial clarification of the scope of the administrative remedies available, if any, prior to any further administrative proceedings."

Upon cross motions for summary judgment, the district court ruled in Sublette County's favor. It concluded that (1) Sublette County may present a petition to the Board pursuant to Wyo. Stat. Ann. § 39–1–304(a)(xiv), and (2) the 1989 settlement agreement was not enforceable against Sublette County. In rendering its decision on the settlement agreement, the district court reasoned that: (1) the County did not have authority to contract away future rights to mineral tax revenue, and (2) the members of the Board of County Commissioners who were in office at the time the settlement agreement was signed have been replaced, and under this court's decision in *Mariano & Assoc., P.C. v. Bd. of County Comm'rs of Sublette County*, 737 P.2d 323 (Wyo.1987), future boards of county commissioners could not be bound to the settlement agreement.[4] The Department of Revenue and Exxon timely appeal.

### STANDARD OF REVIEW

■ Our standard for reviewing summary judgment is well established. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *White v. University of Wyoming*, 954 P.2d 983, 985 (Wyo.1998). This court evaluates the propriety of summary judgment using the same standards and materials used by the district court, affording no deference to the district court's decision on issues of law. *Id.*

■ Statutory interpretation is a question of law. If the conclusion of law is in

---

3. The Board consolidated Sublette County's petition with another case before the Board, the "records case." In the records case, Sublette County is attempting to obtain taxpayer information from the Department pursuant to Wyo. Stat. Ann. § 39–6–309(c)(ii) (Michie 1997).

4. The district court also ordered the Department of Revenue to produce documents requested by Sublette County pursuant to Wyo. Stat. Ann. § 39–6–309(c)(ii). This ruling has not been challenged on appeal.

accordance with the law, we affirm it; if it is not, we correct it. *Cargill v. State, Dep't of Health, Div. of Health Care Financing,* 967 P.2d 999, 1001 (Wyo.1998); *May v. May,* 945 P.2d 1189, 1191 (Wyo.1997).

We endeavor to interpret statutes in accordance with the Legislature's intent. We begin by making an "'inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.'" *Parker Land and Cattle Company v. Wyoming Game and Fish Commission,* 845 P.2d 1040, 1042 (Wyo.1993) (quoting *Rasmussen v. Baker,* 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute in pari materia.

*State Dep't of Rev. & Taxation v. Pacificorp,* 872 P.2d 1163, 1166 (Wyo.1994); *see also Cargill,* 967 P.2d at 1001; *State ex rel. Workers' Safety & Compensation Div. v. Bruhn,* 951 P.2d 373, 376 (Wyo.1997).

### DISCUSSION

#### Sublette County's Section 14 Petition (Wyo.Stat.Ann. § 39–1–304(a)(xiv))

Before addressing the substance of the appellants' claims, a review of the primary players in Wyoming's mineral tax system will facilitate an understanding of this case.

There exists then, under current state taxation methodology, three state players and the counties: the state Department of Revenue with the collection and taxation supervision responsibilities; the State Board of Equalization with a semi-judicial appeal and supervisory responsibility; and the Mineral Audit Division of the Department of Audit with a delinquency audit responsibility; and finally, county governments which have a direct pecuniary interest in the collection of the ad valorem tax. Value is established by the Department of Revenue subject to appeal to the State Board of Equalization with the function of the counties regarding ad valorem tax only limited to a quantities validation program for collection. No particular level of cooperation

between the state Audit Division and the county search efforts is demonstrable and the cooperation between the Department of Revenue and the Audit Division is not directly addressed.

*Union Pacific Resources Co. v. State,* 839 P.2d 356, 377 (Wyo.1992). The value established by the Department of Revenue is the same for both ad valorem and severance tax purposes. *Id.* at 362.

Narrowing our focus to the duties performed by the Board of Equalization, we see that the role of the Board under the mineral taxation system changed dramatically in 1991.

Prior to legislative changes made by 1991 Wyo. Sess. Laws ch. 174, the Wyoming State Board of Equalization had administrative functions and duties relating to the Department of Revenue and Taxation. The 1991 enactment separated out the Board of Equalization by creating two different administrative agencies. The Board of Equalization became an independent quasi-judicial organization with constitutional and statutory duties to equalize valuation and decide disagreements regarding statutory provisions affecting the assessment, levy and collection of taxes. These responsibilities include both the ad valorem state taxation system which provides county funding and the severance tax system which provides state funding. Specific statutory direction is provided for the Board of Equalization to review all contentions of improper assessment.

*Union Pacific Resources Co. v. State,* 839 P.2d at 363.

■ With these roles in mind, we turn to the appellants' argument that Sublette County should not be permitted to challenge Exxon's production valuation from past tax years. They contend that because Sublette County did not appeal the valuation certifications for those years, they cannot, at this late date, challenge the valuations. We disagree.

The Board of Equalization's authority to review valuations from prior tax years is found in Wyo. Stat. Ann. § 39–1–304 (Michie 1997),[5] which provides in pertinent part:

---

5. In 1998, these provisions were recodified as

Wyo. Stat. Ann. § 39–11–102.1(c) and (c)(x) (Mi-

(a) The state board of equalization shall perform the duties specified in article 15, section 10 of the Wyoming constitution and shall hear appeals from county boards of equalization and review final decisions of the department upon application of any interested person adversely affected, including boards of county commissioners for the purposes of this subsection, under the contested case procedures of the Wyoming Administrative Procedure Act.... *In addition, the board shall* :

> (xiv) Carefully examine into all cases wherein it is alleged that property subject to taxation has not been assessed or has been fraudulently, improperly, or unequally assessed, or the law in any manner evaded or violated, and cause to be instituted proceedings which will remedy improper or negligent administration of the tax laws of the state[.]

(Emphasis supplied.) This statute delineates two of the Board's functions. We discern subsection (a) to be part of the Board's adjudicatory function, *i.e.*, that subsection gives the Board the power to hear appeals. Subsection (a)(xiv) (Section 14), on the other hand, is more closely aligned with the Board's regulatory function. This section gives the Board the power to carefully examine allegations of improper, unequal, or fraudulent assessment, and the power to cause to be instituted proceedings to remedy improper or negligent administration of Wyoming's tax laws. *See also* Wyoming Board of Equalization Rules and Regulations, Board Examination Procedures, Ad Valorem Tax, ch. 4.

The Board's Section 14 power was examined in *State Tax Comm'n v. BHP Petroleum Co., Inc.*, 856 P.2d 428 (Wyo.1993). In that case, after an audit, the Department of Revenue determined that the fair market value of BHP's production was greater than the amount originally certified to the county

assessor. *Id.* at 430. As a result, the Board of Equalization directed the county assessor to increase the value of BHP's production and issue ad valorem tax notices to BHP. *Id.* at 430–31. On appeal, BHP contended that Section 14 does not contain legislative authority for retroactive assessment. *Id.* at 435. We rejected BHP's argument, holding that Section 14 "specifically authorizes the Board to remedy improper assessments." *Id.* at 436. We reasoned:

> This section provides for revaluation when it directs the State Board of Equalization to discover errors or unequally assessed taxes and remedy those errors. W.S. 39–1–304(a)(xiv). As the State points out, errors are usually discovered by looking back, therefore retroactive action is explicit in the statute. Thus the process that occurs is prospective correction of improper self-assessment. It is not retroactive revaluation.

*Id.* at 435–36.

Despite the clear language of Section 14 permitting the Board to "carefully examine" allegations, the appellants complain that Sublette County should not be allowed to present allegations pursuant to Section 14 after it failed to appeal valuation certifications. First, the appellants claim that Sublette County's failure to appeal [6] the certifications within 30 days precludes any further investigation into the assessments. Wyoming State Board of Equalization Rules and Regulations, Rules of Practice and Procedure Before the Wyoming State Board of Equalization, ch. 2, § 5(a) (30 days from final administrative decision to file contested case notice). However, the 30–day limit provided by the Board's rules is a limitation on the time a party has to file a contested case proceeding with the Board. Section 14 proceedings, on the other hand, are governed by chapter 4 of the Board's rules, which does not limit the time in which a party may

chie June 1998 Supp.). 1998 Wyo. Sess. Laws Ch. 5, §§ 1, 4. Although the entire taxation statutory scheme was recodified in 1998, we will refer to the statutes as they were codified at the time this action was instituted.

**6.** Wyo. Stat. Ann. § 39–1–304(a) was amended in 1995 to provide boards of county commissioners with the right to appeal a Department of Reve-

nue decision to the Board of Equalization. 1995 Wyo. Sess. Laws Ch. 209, § 1. Nevertheless, a county still does not have standing to pursue judicial review of a decision of the Board. Wyo. Stat. Ann. § 39–1–306 and § 39–1–101(a)(xii) (Michie 1997). *Basin Elec. Power Coop., Inc. v. Dep't of Rev.*, 970 P.2d 841, 847–48 (Wyo.1998).

present allegations pursuant to Section 14. Wyoming Board of Equalization Rules and Regulations, Board Examination Procedures, Ad Valorem Tax, ch. 4.

■ In the alternative, the appellants argue that permitting Sublette County to file a Section 14 petition is contrary to what they perceive to be a doctrine of finality found in Wyoming's taxation system. To support their finality argument, they direct our attention to a number of statutes within Wyoming's taxation scheme that limit the time to appeal or file a contested case. Wyo. Stat. Ann. § 39–2–208(g) and (h) (Michie 1997) (one year to appeal selection of valuation method); Wyo. Stat. Ann. § 39–2–214(g) (Michie 1997) (thirty days to appeal mine production valuation amendments); Wyo. Stat. Ann. § 39–2–201(d) (Michie 1997) (thirty days for taxpayer to appeal state assessment); Wyo. Stat. Ann. § 39–3–203 (Michie 1997) (one year for taxpayer to challenge illegal assessment, levy, or collection of taxes). However, the appellants' argument presents a double-edged sword: these same statutes also clearly illustrate that the legislature is well aware of how to establish time limitations. We have previously recognized that Section 14 does not contain a time limitation. *State Tax Comm'n v. BHP Petroleum Co., Inc.,* 856 P.2d at 437. The legislature is aware of this decision, and it has not amended Section 14 to include a time limit. We believe that limiting the time to present Section 14 allegations is a job for the legislature, not this court.[7]

Finally, the appellants argue that a broad interpretation of Section 14 will lead to parties bypassing appeals in order to make challenges pursuant to Section 14. We do not dismiss this concern lightly. However, Wyo. Stat. Ann. § 39–1–304(a) clearly indicates that the Board's power to "carefully examine" alleged taxation improprieties under Section 14 is "in addition to" the Board's duty to hear appeals from Department of Revenue decisions. Therefore, even though the appellants raise a legitimate practical concern, we cannot, in the face of clear statu-

tory language, judicially remove the Board's statutory duty. Recognizing the Board's dual roles, the clear language of Section 14, and the lack of time limitation on initiating a Section 14 petition, we must reject the appellants' argument that Sublette County's Section 14 petition is untimely. "The necessity for equal and uniform taxation is compelling and overriding." *State Tax Comm'n v. BHP Petroleum Co., Inc.,* 856 P.2d at 439. The district court's decision on this issue is affirmed.

### The Settlement Agreement

The district court ruled that the 1989 settlement agreement is not enforceable against Sublette County and did not bar Sublette County from challenging Exxon's valuations. In rendering its decision, the district court cited two reasons: (1) the County did not have authority to contract away future rights to mineral tax revenue, and (2) the members of the Board of County Commissioners who were in office at the time the settlement agreement was signed have since been replaced, and that board could not bind the current board.

We first address Sublette County's contention that it is not a party to the settlement agreement. In the 1989 cap litigation, the "Stipulation for Entry of Declaratory Judgment," which was signed by the Sublette County Attorney and filed in district court, provided: "The parties have engaged in settlement negotiations which have resulted in an agreement which is embodied in a Settlement Agreement, an executed copy of which is attached." Despite the stipulation and despite the fact that it was listed as a party to the settlement agreement, Sublette County contends it is not a party to the settlement agreement because, in 1989, the Sublette County Attorney merely signed the agreement "approved as to form."

■ Even if we accept Sublette County's argument that it is not a *signatory* to the settlement agreement, the doctrine of judicial estoppel precludes Sublette County from as-

---

7. We recognize that some examinations may be limited by equitable, legal, and/or practical considerations. *See* Wyoming Board of Equalization Rules and Regulations, Board Examination Procedures, Ad Valorem Tax, ch. 4 § 3(b).

serting it is not a *party* to the 1989 settlement agreement.

Judicial estoppel is a doctrine which precludes a party from asserting inconsistent positions in different judicial proceedings. Under this doctrine, a party who by his pleadings, statements or contentions, under oath, has assumed a particular position in a judicial proceeding is estopped to assume an inconsistent position in a subsequent action.

*Ottema v. State ex rel. Worker's Compensation Div.*, 968 P.2d 41, 45 (Wyo.1998) (citations omitted). In 1989, Sublette County was a party to the cap litigation; and that litigation was ended, in part, thanks to Sublette County's assertion in the stipulation that it had negotiated and executed the settlement agreement. Because Sublette County is taking an inconsistent position in this case, Sublette County is judicially estopped from asserting that it is not a party to the 1989 settlement agreement. Moreover, nothing in the record indicates that Sublette County continued the cap litigation after the entry of the declaratory judgment. This fact perhaps weighs most heavily against Sublette County's assertion that it is not a party to the settlement agreement.

■ Having concluded that Sublette County is a party to the 1989 settlement agreement, the next issue to be resolved is whether the 1989 settlement agreement falls within the parameters of the rule that permits, under certain circumstances, Wyoming governmental entities to void contracts which extend beyond the term of office of the government decision makers. The rule has been stated in this fashion:

[A]n agreement extending beyond the term of the contracting authority ... may be voidable by the government or void upon attack by a third party if, under the facts and circumstances, the agreement is not reasonably necessary or of a definable advantage to the city or governmental body.

*Mariano & Assoc., P.C. v. Bd. of County Comm'rs of Sublette County*, 737 P.2d 323, 331–32 (Wyo.1987).

The question presented in this case is a novel one: does the *Mariano* rule extend to the judicially-entered 1989 settlement agreement, *i.e.*, may Sublette County void such an agreement? Sublette County argues that this court has extended this rule beyond the realm of government contracts, and the rule should be further extended to preclude enforcement of the settlement agreement. To support its argument, Sublette County directs our attention to *Michie v. Bd. of Trustees of Carbon County Sch. Dist. No. 1*, 847 P.2d 1006 (Wyo.1993). In *Michie,* the question was whether a school district board of trustees could discontinue its policy of permitting board members to participate in the school district's insurance plan. A board member whose insurance was discontinued filed an action based on promissory estoppel to prevent the board from discontinuing the plan. *Id.* at 1008. We reiterated the policy behind the *Mariano* rule: "A governing body should not be able to deprive its successor in interest of discretion to act for the public good." *Id.* at 1010 (citing *Mariano & Assoc., P.C. v. Bd. of County Comm'rs of Sublette County*, 737 P.2d at 329.) We went on to say: "We believe that this policy applies not only to extended-term governmental contracts but also to extended-term governmental promises which do not constitute formal contracts." *Michie*, 847 P.2d at 1010.

■ Relying on *Michie,* Sublette County contends that the *Mariano* rule should extend to the 1989 settlement agreement. We disagree. As previously determined, Sublette County is a party to the settlement agreement, and the agreement became part of the stipulation which ended the litigation. As such, it had the force and effect of a judicial decree. *Day v. Davidson*, 951 P.2d 378, 382 (Wyo.1997); *see also McKee v. McKee*, 882 P.2d 885, 887 (Wyo.1994). Although a settlement agreement is interpreted in the same fashion as a contract, *Matter of Estate of McCormick*, 926 P.2d 360, 362 (Wyo.1996), it does not necessarily follow that the *Mariano* rule permits Sublette County to void the settlement agreement. As with any judicial decree, a party is bound to obey, and even a governmental entity does not have the option of disobeying a court order. If we were to allow governmental entities to avoid settlement agreements at

the discretion of the new members of a governing body, the judicial system would cease to be a forum that provides final resolution of disputes. Instead, settlement agreements like the one before the court would only be final until new board members were elected. For the foregoing reasons, we conclude that Sublette County may not void the 1989 settlement agreement. Because we reverse the decision of the district court on this issue, we are required to go one step further than the district court did in resolving this case.

### Does the Settlement Agreement Preclude Sublette County's Petition?

 Having determined that (1) Sublette County's Section 14 petition before the Board of Equalization is timely, and (2) Sublette County is bound by the settlement agreement, the question becomes whether the terms of the settlement agreement preclude Sublette County's Section 14 petition. We find they do not.

The settlement agreement covers three different periods of time. For 1986, 1987, and 1988, Exxon paid $12 million to the State and Sublette County to settle its tax liability for those tax years. The second period covered is January 1, 1989 through August 31, 1991. For this period, the State and Sublette County specifically agreed to use the comparison value method and to use the Howell and Yates agreements as the comparable value:

> The State and the County agree to value, for all tax purposes, all production from the Wellfield occurring during the period of January 1, 1989 through August 31, 1991 using the comparison value method provided in Section 10 of the current Regulations of the Board of Equalization by using the agreements negotiated between Exxon and Howell Petroleum Corp. and Yates Petroleum Corp. as the comparable value.

Neither of these periods is at issue.

Sublette County does, however, challenge Exxon's taxation for the period beginning September 1, 1991. The question thus becomes whether the following portion of the settlement agreement precludes Sublette County's petition:

> After August 31, 1991, the State agrees that it will recognize the Howell and Yates agreements as a comparison value and that the comparison value method may be used in conjunction with other recognized appraisal techniques to determine value. If the State uses any method other than the comparison value method based on the Howell and Yates agreements, the Parties agree that the question of the future taxability, for severance and ad valorem purposes, and value of future helium production remain open and are not resolved by this Agreement.

This provision, by its permissive language, gives the State (the Department of Revenue and the Board of Equalization) the latitude to continue using the comparison value method based on the Howell and Yates agreements. If the State used a different method or the comparison value method without the Howell and Yates agreements, the question of the taxation and valuation of helium production would remain open. Although the State and County agreed to the valuation method for 1989 through August 1991 production, the State alone had discretion to select a valuation method for post-August 1991 production. Therefore, because Sublette County had no role in the selection of methodology, and because nothing in the settlement agreement specifically precludes Sublette County from challenging the methodology selected, we conclude that the county may proceed with its Section 14 allegations that the post-August 1991 valuation method has resulted in unequal or improper assessments.

The Board of Equalization has constitutional and statutory duties to equalize valuation. Wyo. Const. art. 15, § 10; Wyo. Stat. Ann. § 39-1-304. Assuming the Board conducts an examination and discovers that Exxon production has been unequally or improperly assessed, the Board must "cause to be instituted proceedings" which will remedy such impropriety. Wyo. Stat. Ann. § 39-1-304(a)(xiv). If revaluation is ordered and a valuation method other than "the comparison value method based on the Howell and Yates agreements" is used, the terms of the settlement agreement dictate that the questions of helium taxation and valuation would re-open,

which could include the possibility of refund liability. *See* Wyo. Stat. Ann. § 39–4–101(b) (Michie 1997).

304(a)(xiv) (Michie 1997), thus triggering the broad power of the Board of Equalization to carefully examine this case.

### CONCLUSION

The decision of the district court is affirmed in part and reversed in part. The terms of the settlement agreement do not preclude Sublette County from presenting allegations of unequal or improper assessment pursuant to Wyo. Stat. Ann. § 39–1–