**Clayton E. PETERSON, Jr., and Tanya Peterson, Appellants (Plaintiffs),**

v.

**WYOMING GAME AND FISH COMMISSION, Wyoming Game and Fish Department, Appellees (Defendants).**

**No. 97–182.**

Supreme Court of Wyoming.

Nov. 5, 1999.

Representing Appellants: James Richard McCarty, Casper; and Keith P. Tyler, Casper.

Representing Appellees: William U. Hill, Attorney General; John W. Renneisen; Deputy Attorney General; Thomas C. Wilson, Senior Assistant Attorney General; and Jennifer A. Cudworth, Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

THOMAS, Justice.

The sole issue in this appeal evolves out of the contention that a Wyoming Game and Fish warden, serving as a Bear Management Officer, was a peace officer so as to invoke the waiver provision found in Wyo. Stat. Ann. § 1–39–112 (Lexis 1999) of the Wyoming Governmental Claims Act pertaining to peace officers. Clayton E. Peterson, Jr. and Tanya Peterson (the Petersons) seek to recover for Mr. Peterson's injuries when he was mauled by a bear that was the subject of bear management activities of the Wyoming Game and Fish Commission (Game and Fish), which the Petersons contend were negligently performed. The Petersons seek to have Wyo. Stat. Ann. § 7–2–101(a)(iv) (Michie Repl. 1995) construed broadly to include a warden's activities as the Bear Management Officer within the functions of a peace officer.

We agree with the district court that the statute should not be construed so broadly, and we affirm the Order Granting Defendant's Motion for Summary Judgment.

In the Brief of Appellants, filed by the Petersons, the articulated issue is:

Whether Section 7–2–101(a)(iv)(C) is meant to be read in the conjunctive or in the disjunctive, that is, does the comma between the word "felony" and the word "during" mean "or" or "and".

This Statement of the Issues is found in the Brief of Appellees, filed on behalf of the Game and Fish:

I. As a matter of statutory construction, whether the comma between the words "felony" and "during" stated in the definition of "peace officer," pursuant to Wyo. Stat. § 7–2–101(a)(iv)(C), should be interpreted to mean an "or" or "and."

II. Whether the particular duty of managing bears as a Game and Fish bear management officer falls within the traditional definition of "peace officer" and whether this activity under the particular facts of this case falls within the intent of the legislature in adopting Wyo. Stat. § 1–39–112.

III. Whether injury by a grizzly bear is an inherent risk assumed by appellant when hunting in grizzly bear country, thereby barring appellant from recovery pursuant to the Recreational Safety Act, Wyo. Stat. § 1–1–121, et seq.

On July 3, 1978, the federal government captured a grizzly bear and placed a radio collar on it so that it could be used as a research bear in the Yellowstone ecosystem. The animal was designated as Bear 34. Some time later, Bear 34 became a research bear in the Livestock Interaction Study of the Game and Fish. On May 17, 1991, Bear 34 was recaptured by Game and Fish personnel in order to inspect it. They discovered that Bear 34 had a cut on its neck associated with the previous placement of the radio collar, and the wound was infected. The

* Chief Justice at time of oral argument; retired November 2, 1998.

Game and Fish personnel treated the wound with antiseptic and released Bear 34.

Bear 34 was captured and released by Game and Fish personnel three times between July 1994 and September 1994 for the purpose of monitoring the bear. During that period of time, the Game and Fish personnel became aware that Bear 34 had been killing livestock on nearby ranches, and they learned that Bear 34 was deaf. Despite this information, the Game and Fish personnel never classified Bear 34 as a nuisance bear, nor was it removed from the habitat.

On September 20, 1994, while hunting elk near the Pacific Creek area in Teton County, Mr. Peterson was attacked by Bear 34. Peterson shot the bear, but he failed to kill it. After Peterson shot Bear 34, it grabbed and mauled him, causing serious injuries. The bear was mortally wounded, and it subsequently was found and destroyed by Game and Fish personnel.

On April 18, 1995, the Petersons filed a Complaint naming the Game and Fish and ten of its unidentified personnel as defendants. The thrust of the Petersons' action was that the Game and Fish personnel were negligent with respect to their maintenance and supervision of Bear 34. A motion for summary judgment was filed on May 3, 1996, in which the Game and Fish contended that the Petersons' claims were barred by the Recreation Safety Act and that the allegations did not bring the Petersons' claims within any exception to the Wyoming Governmental Claims Act. On May 13, 1997, the district court granted the motion for summary judgment on the premise that the Game and Fish personnel doing "bear management" work did not come within the peace officer exception to the Wyoming Governmental Claims Act. The thrust of that ruling was that the State of Wyoming had not waived immunity from the action brought by the Petersons. The Petersons appeal from the Order Granting Defendant's Motion for Summary Judgment.

■ When only questions of law are presented to the court, a summary judgment is an appropriate remedy because it eliminates the necessity for a formal trial. *Raymond v. Steen*, 882 P.2d 852, 856 (Wyo.1994); *Bryant v. Hornbuckle*, 728 P.2d 1132, 1135 (Wyo.1986). We are satisfied that there is no genuine issue of material fact present in this case. Summary judgment, therefore, is appropriate if the prevailing party was entitled to judgment as a matter of law. *Nowotny v. L & B Contract Industries, Inc.*, 933 P.2d 452, 455 (Wyo.1997) (*quoting Thomas By Thomas v. South Cheyenne Water and Sewer Dist.*, 702 P.2d 1303, 1304 (Wyo.1985)); *Bidache, Inc. v. Martin*, 899 P.2d 872, 873 (Wyo.1995) (*quoting Thunder Hawk By and Through Jensen v. Union Pacific Railroad Co.*, 844 P.2d 1045, 1047 (Wyo.1992)); *Sandstrom v. Sandstrom*, 884 P.2d 968, 971 (Wyo. 1994). Statutory interpretation involves a question of law, and our review in such a case is plenary. *Thomas v. Thomas*, 913 P.2d 854, 855 (Wyo.1996); *Butts v. Wyoming State Bd. of Architects*, 911 P.2d 1062, 1065 (Wyo.1996). No deference is accorded to the decision of the district court on issues of law. *Hermreck v. United Parcel Service, Inc.*, 938 P.2d 863, 866 (Wyo.1997); *Griess v. Office of the Atty. Gen., Div. of Criminal Investigation*, 932 P.2d 734, 736 (Wyo.1997).

■ The Petersons' theory in the district court, reiterated in this appeal, is that this case comes within one of the statutory exceptions to sovereign immunity articulated in the Wyoming Governmental Claims Act. Under the Wyoming Governmental Claims Act, immunity is the rule, and liability is the exception. *Newberry v. Board of County Com'rs of Fremont County*, 919 P.2d 141, 145 (Wyo.1996); *Vigil v. Ruettgers*, 887 P.2d 521, 524 (Wyo.1994). Liability exists only when the statute recognizes an exception to sovereign immunity. *May v. Southeast Wyoming Mental Health Center*, 866 P.2d 732, 736 (Wyo.1993); *Veile v. Board of County Com'rs of Washakie County*, 860 P.2d 1174, 1177 (Wyo.1993). In the absence of a statutory exception, no liability attaches to the state or its employees. *Cline v. State, Dept. of Family Services*, 927 P.2d 261, 263 (Wyo.1996); *Harbel v. Wintermute*, 883 P.2d 359, 363 (Wyo.1994).

The exception that the Petersons endeavor to invoke is found in Wyo. Stat. Ann. § 1–39–112:

A governmental entity is liable for damages resulting from tortious conduct of peace officers while acting within the scope of their duties.

The definition of a peace officer for purposes of this exception to the Wyoming Governmental Claims Act is set forth in Wyo. Stat. Ann. § 7–2–101(a)(iv)(C):

> (a) As used in W.S. 7–2–101 through 7–2–105:
>
> * * *
>
> (iv) "Peace officer" means:
>
> * * *
>
> (C) Game and fish law enforcement personnel qualified pursuant to W.S. 9–1–701 through 9–1–707 and when enforcing Wyoming felony statutes following observation or discovery of the commission of a felony, during the performance of their statutory duties, or while responding to requests to assist other peace officers performing their official duties[.]

The question squarely presented is the correct interpretation of Wyo. Stat. Ann. § 7–2–101(a)(iv)(C).

The Petersons' argument is that the statutory definition should be given a broad construction to the end that there are a series of requirements separated by a comma or a conjunction. Under the Petersons' theory, a Game and Fish law enforcement officer who is qualified pursuant to Wyo. Stat. Ann. §§ 9–1–701 through 9–1–707 (Michie Repl. 1995) is a peace officer "when enforcing Wyoming felony statutes following observation or discovery of the commission of a felony;" "when engaged in the performance of his statutory duties;" or "while responding to requests to assist other peace officers performing their official duties * * *." The Game and Fish argues to the contrary seeking a narrow construction of the statute. Under its theory, the phrase "during the performance of their statutory duties" is simply a modifier of the phrase "when enforcing Wyoming felony statutes following observation or discovery of the commission of a felony * * *." Under its construction, a qualified Game and Fish employee would be a peace officer: (1) "when enforcing Wyoming felony statutes following observation or discovery of the commission of a felony" and "during the performance of their statutory duties;" or (2) "while responding to requests to assist other peace officers performing their official duties * * *."

Our rules relating to the interpretation of statutes demand that we abide by the plain meaning of the statute if its language is clear and unambiguous. *JA v. CJH*, 923 P.2d 758, 761 (Wyo.1996) (*quoting Deloges v. State ex rel. Wyoming Workers' Compensation Div.*, 750 P.2d 1329, 1331 (Wyo. 1988)); *Rue v. Carter*, 919 P.2d 633, 635 (Wyo.1996). The statute will be construed as a whole with the ordinary and obvious meaning applied to words as they are arranged in paragraphs, sentences, clauses and phrases to express the intent of the legislature. *Newton v. State ex rel. Wyoming Workers' Compensation Div.*, 922 P.2d 863, 865 (Wyo. 1996) (*quoting State Dept. of Revenue and Taxation v. Pacificorp*, 872 P.2d 1163, 1166 (Wyo.1994)); *In re Honeycutt*, 908 P.2d 976, 978 (Wyo.1995). In analyzing the clarity or ambiguity of the statute, we turn to the guidance of grammarians. *Management Council of Wyoming Legislature v. Geringer*, 953 P.2d 839, 843–44 (Wyo.1998).

In this instance, the disagreement of grammarians as to the correct method for treating the effect of the commas in the statute leads to the ineluctable conclusion that the statute is ambiguous. In interpreting the legislature's placement of the commas in the statute, the definition may reasonably be interpreted as either incorporating several items in a series, or the phrase, "during the performance of their statutory duties," can reasonably be construed as merely modifying the phrase which precedes it. In support of the position that the statutory definition consists of items in a series, Anne Stilman, *Grammatically Correct*, 79–80 (1997) remarks:

> Separating Elements in a Series
>
> * * *
>
> Whenever you construct a sentence that contains a list of elements of equal grammatical weight, you must use commas to

separate them. The elements can range from single words to phrases and clauses.

In a list of three or more elements, separate the elements with commas. Each element up to the second-to-last one *may* be: that is, it's a style decision. A comma in this position is called a serial or series comma, and some writers put it in and some don't.

*See also* John E. Warriner, *English Composition and Grammar*, 642 (Benchmark ed.1988); and *Merriam Webster's Guide to Punctuation and Style*, 21 (1995).

Alternatively, the statute may be narrowly construed so that the phrase, "during the performance of their statutory duties," merely modifies the phrase that precedes it and imposes an additional limitation upon the phrase, "when enforcing Wyoming felony statutes following observation or discovery of the commission of a felony * * *." As Marie L. Waddell, et al., *The Art of Styling Sentences—20 Patterns for Success*, 71 (3rd. ed.1993) states:

Modifiers

Adding modifiers is a good way to clarify a sentence that is too brief or lean. Often some key word will require additional explanation—one or more modifiers—in order to make its meaning clear. Modifiers are especially helpful if you wish to appeal to your reader's sense, to add some figurative language, or to make comparisons or allusions.

These modifiers may be single words, phrases, even clauses; they may be at the beginning, in the middle, or at the end of a sentence. They may be ideas or descriptions or figures of speech. Take two short ineffective sentences. Make one into a modifier or a dependant clause, and then combine it with the other sentence for a stronger, clearer construction.

*See also* James R. Hurford, *Grammar—A Student's Guide*, 129 (1994) and James G. Fernald, *English Grammar Simplified*, 167 (Cedric Gates revised 1968).

Our methodology for statutory interpretation is summarized in *Wylie v. Wyoming Dept. of Transp.*, 970 P.2d 395, 398 (Wyo.1998):

In interpreting statutes, our primary consideration is to determine the legislature's intent. *State ex rel. Motor Vehicle Div. v. Holtz*, 674 P.2d 732, 736 (Wyo. 1983). All statutes must be construed in pari materia; and in ascertaining the meaning of a given law, all statutes relating to the same subject or hav[ing] the same general purpose must be considered and construed in harmony. *Id.* at 735. *Holtz* explained our statutory construction rules:

"If the language is sufficiently clear, there is no need to resort to rules of construction. When the language is not clear or is ambiguous, the court must look to the mischief the statute was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conclusions of law, and other prior and contemporaneous facts and circumstances, making use of the accepted rules of construction to ascertain a legislative intent that is reasonable and consistent."

*Holtz*, 674 P.2d at 736.

In our endeavor to discern legislative intent with respect to this definitional statute, we recognize that the construction claimed by the Petersons would result in Game and Fish law enforcement personnel being peace officers for all purposes while involved in the performance of their statutory duties. Had the legislature intended to make Game and Fish law enforcement personnel peace officers for all purposes, surely it would have pursued the pattern of definitional phraseology found in Wyo. Stat. Ann. § 7–2–101(a)(iv)(A), (B), (D), (F) and (H). Those provisions in the statute are forthright:

(iv) "Peace officer" means:

(A) Any duly authorized sheriff, under sheriff or deputy sheriff who has qualified pursuant to W.S. 9–1–701 through 9–1–707;

(B) Any duly authorized member of a municipal police force, a college or university campus police force or the Wyoming highway patrol who has qualified pursuant to W.S. 9–1–701 through 9–1–707;

* * *

(D) Agents of the division of criminal investigation appointed pursuant to W.S. 9–1–613 and capitol police designated and appointed under W.S. 9–1–612 who have qualified pursuant to W.S. 9–1–701 through 9–1–707;

\* \* \*

(F) Any duly authorized arson investigator employed by the state fire marshal who has qualified pursuant to W.S. 9–1–701 through 9–1–707;

\* \* \*

(H) Any duly authorized detention officer in the performance of his duties and who has qualified pursuant to W.S. 9–1–701 through 9–1–707[.]

Instead, subparagraph (C) reads much more like Wyo. Stat. Ann. § 7–2–101(a)(iv)(E), (G), and (J), in which limitations upon general law enforcement activities are obvious:

(E) Inspectors of the Wyoming livestock board authorized under W.S. 11–18–101 through 11–18–113 and 11–20–201 or duly authorized investigators of the Wyoming livestock board who have qualified pursuant to W.S. 9–1–701 through 9–1–707 when enforcing W.S. 11–19–101 through 11–24–115 and 11–29–101 through 11–30–113 and any laws prohibiting theft, killing or mutilation of livestock or any part thereof;

\* \* \*

(G) Any superintendent, assistant superintendent or full-time park ranger of any state park or historic site who has qualified pursuant to W.S. 9–1–701 through 9–1–707, when acting within the boundaries of the state park or historic site, or when responding to a request to assist other peace officers performing their official duties;

\* \* \*

(J) Investigators employed by the Wyoming state board of outfitters and professional guides and qualified pursuant to W.S. 9–1–701 through 9–1–707, when enforcing W.S. 23–2–401 and 23–2–406 through 23–2–417 and board rules and regulations promulgated under W.S. 23–2–410(a)(ii).

As the Game and Fish correctly points out in its brief, prior to 1979 the definition of a peace officer did not include Game and Fish employees. We discern a historic reluctance on the part of the legislature to invest Game and Fish employees with broad law enforcement powers. We are satisfied that the language the legislature used in defining Game and Fish law enforcement personnel as peace officers requires us to hold that the phrase, "during the performance of their statutory duties," modifies and provides a limitation upon the preceding phrase, "when enforcing Wyoming felony statutes following observation or discovery of the commission of a felony \* \* \*." We find grammatical support for this conclusion in the proposition that had the legislature intended the definition to be construed as a series, it would have omitted the comma before the last "or" so that the statute would have defined peace officers as qualified game and fish personnel "when enforcing Wyoming felony statutes following observation or discovery of the commission of a felony, during the performance of their statutory duties or while responding to requests to assist other peace officers performing their official duties \* \* \*." The omission of the final comma would have resulted in an unambiguous definition of Game and Fish law enforcement personnel as peace officers when performing the functions of any one of the three phrases in the series because that phrase could not have modified the preceding phrase without the significant comma.

 We hold that the correct interpretation of this statute results in qualified Game and Fish personnel being defined as peace officers only (1) when enforcing Wyoming felony statutes following observation or discovery of the commission of a felony that occurs during the performance of their statutory duties; or (2) while responding to requests to assist other peace officers performing their official duties. It is undisputed in this case that the Game and Fish personnel responsible for the bear management program were neither "enforcing Wyoming felony statutes following observation or discovery of the commission of a felony," nor were they "responding to requests to assist other peace officers performing their official duties

\* \* \*." The supervision and monitoring of Bear 34 by Game and Fish personnel, even those who were qualified as law enforcement officers, did not bring them within the definition of a peace officer, and the district court properly granted the Game and Fish's motion for summary judgment.

The Order Granting Defendant's Motion for Summary Judgment entered in the district court is affirmed.